'UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THOMAS PAUL TERLECKY, II, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-23-173-G |
| ) | |
| LOWE'S HOME CENTERS, LLC, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Now before the Court is the Motion for Summary Judgment (Doc. No. 49) filed by Defendant Color Ink Corporation, d/b/a Dallas Johnson Greenhouse ("Color Ink"). Plaintiff Thomas Paul Terlecky II has responded (Doc. No. 58), and Color Ink has filed a Reply (Doc. No. 60).

I. *Undisputed Material Facts*

On May 2, 2021, Plaintiff was shopping at a Lowe's Home Improvement store on North Kelley Avenue in Edmond, Oklahoma ("the Store"). The Store was owned, controlled, and managed by Defendant Lowe's Home Centers, LLC ("LHC"). LHC Interrog. Answer No. 5 (Doc. No. 49-3) at 3.[1] Plaintiff claims that while he was on the premises of the Store, he was injured when his leg struck the metal "tongue" protruding from a rack used to display flowers to customers. Am. Compl. ¶¶ 8-9 (Doc. No. 14).

---

[1] LHC has filed an Answer (Doc. No. 23) and does not seek summary judgment against Plaintiff.

Color Ink is a wholesale greenhouse that grows and sells flowers from its location in Council Bluffs, Iowa. Sciscoe Aff. ¶ 3 (Doc. No. 49-1). Color Ink supplies flowers to major retailers, including LHC. *Id.* ¶ 4. To supply the flowers, Color Ink loads them onto flower racks (also referred to as "carts") and hires trucking companies to transport and deliver the loaded racks to retailers. Answer ¶ 12 (Doc. No. 23); Sciscoe Aff. ¶¶ 5-6.

Color Ink owns the flower racks and is responsible for their repair and maintenance. Answer ¶ 12; Sciscoe Dep. 11:5-7, 38:15-17 (Doc. No. 58-1); Van Dyke Dep. 28:22-29:1 (Doc. No. 58-2). Color Ink's employees visually inspect the flower racks at the Iowa facility both as they use them and during the greenhouse's off-season. Sciscoe Dep. 11:8-18, 15:10-23. The metal tongues on the bottoms of the racks are used by Color Ink to connect the flower racks like train cars and move them around the Iowa facility with lawnmowers. *Id.* at 12:4-13:1.

The truck drivers who transport the flower racks to retailers are not employees of Color Ink but independent contractors. Sciscoe Aff. ¶ 7. The truck drivers transport, deliver, and unload the flower racks at garden centers such as those at Lowe's Home Improvement Stores. *Id.* ¶ 8.

In April 2021, Color Ink hired truck drivers to transport and deliver flower racks to the Store. *Id.* ¶ 12. Multiple flower racks were delivered to the Store on or about April 19, 2021, and April 29, 2021. *See* Bills of Lading (Doc. No. 49-2).[2] Once delivery was

---

[2] The Bills of Lading reflect that one shipment held 26 "CARTS" and the other held 24 "CARTS." *See* Bills of Lading at 3, 5. It is not clear from the record, however, if the "CARTS" are flower racks such as the one at issue here.

2

completed, LHC took exclusive possession, custody, and control of the racks. Sciscoe Aff. ¶ 13. Color Ink was not involved in any decisions made by LHC regarding inspection of the condition of flower racks upon their arrival or in the subsequent movement, placement, location, or use for "display" of flowers to LHC invitees on its business premises. *Id.* ¶ 15. Color Ink was aware, however, that the flower racks are sometimes used by its retailers to display plants directly to shoppers. Sciscoe Dep. 17:15-18:10. Prior to May 2, 2021, neither LHC nor anyone else notified Color Ink of any problem with any flower rack that had been delivered to the Store. Sciscoe Aff. ¶ 14.

The metal tongue on the flower rack that was involved in the incident of May 2, 2021, was damaged and misshapen. Sciscoe Dep. 25:3-21; Van Dyke Dep. 75:5-8; Pl.'s Resp. at 7; Def.'s Reply at 3-4. A tongue in such a condition would present a safety hazard to shoppers. Van Dyke Dep. 75:5-8. The sturdy metal with which the tongues are constructed makes such damage unlikely absent serious impact. Sciscoe Dep. 25:16-21.

II.   *Summary Judgment Standard*

Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim. The Court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A party that moves for summary judgment has the burden of showing that the undisputed material facts require judgment as a matter of law in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To defeat summary judgment, the nonmovant need not convince the Court that it will prevail at trial, but it must cite sufficient evidence

admissible at trial to allow a reasonable jury to find in the nonmovant's favor—i.e., to show that there is a question of material fact that must be resolved by the jury. *See Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

> Parties may establish the existence or nonexistence of a material disputed fact by:
>
> - citing to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in the record; or
>
> - demonstrating "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A), (B). While the Court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party, *see Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005), "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Liberty Lobby*, 477 U.S. at 252.

### III.  *Discussion*

In this diversity action, Plaintiff asserts a claim of negligence under Oklahoma law against Color Ink, requesting compensatory and punitive damages. *See* Am. Compl. at 2-

5.[3]  Color Ink moves for summary judgment on this claim pursuant to Federal Rule of Civil Procedure 56, arguing that Color Ink neither owed a duty to Plaintiff nor caused his injury. *See* Def.'s Mot. at 14-21.  Color Ink also seeks summary judgment on Plaintiff's request for punitive damages.  *See id.* at 21-23.

    A. *Negligence Claim*

To recover on a negligence claim under Oklahoma law, the plaintiff must establish "(1) [the] existence of a duty on the part of the defendant to protect plaintiff from injury; (2) defendant's breach of the duty; and (3) injury to plaintiff proximately resulting therefrom." *Scott v. Archon Grp., L.P.*, 191 P.3d 1207, 1211 (Okla. 2008).

    1. *Duty of Care*

The Oklahoma Supreme Court has explained that

> [a] duty of care is an obligation owed by one person to act so as not to cause harm to another.  Whether the defendant owed the plaintiff a duty of care is a question of law for the court in a negligence action. . . . .
>
>     We have long recognized that without regard to the relationship of the parties, a person owes a duty of care to another person whenever the circumstances place the one person in a position towards the other person such that an ordinary prudent person would recognize that if he or she did not act with ordinary care and skill in regard to the circumstances, he or she may cause danger of injury to the other person.  We have explained that a duty of care may arise from a set of circumstances which would require the defendant to foresee the particular harm to the plaintiff.

---

[3] Although the Amended Complaint also references "premises liability," it is undisputed that LHC, not Color Ink, was the owner and operator of the Store and is the only defendant subject to potential liability under such a theory. *See Blissit v. Westlake Hardware, Inc.*, No. 09-CV-58, 2010 WL 1078453, at *1 (N.D. Okla. Mar. 18, 2010) ("'Premises liability' is a term used by the Oklahoma Supreme Court to describe liability sounding in negligence for injuries sustained on real property owned or operated by the defendant." (citing *Pickens v. Tulsa Metro. Ministry*, 951 P.2d 1079 (Okla. 1997))).

> In determining the legal question of the existence of a duty of care, the court considers policy factors that lead the law to say a particular plaintiff is entitled to protection. The most important consideration in determining the existence of a duty of care is foreseeability of harm to the plaintiff. Generally, a defendant owes a duty of care to the plaintiff who is foreseeably endangered by defendant's conduct with respect to all risks that make the conduct unreasonably dangerous. Foreseeable risk of harm establishes the zone of risk to assess whether defendant's conduct created a generalized and foreseeable risk of harm to plaintiff by a reasonable prudent person standard. Foreseeable risk of harm that will lead the law to say a particular plaintiff is entitled to protection will not generally be extended beyond reason and good sense.

*Lowery v. Echostar Satellite Corp.*, 160 P.3d 959, 964 (Okla. 2007) (footnote and citations omitted); *see also Delbrel v. Doenges Bros. Ford, Inc.*, 913 P.2d 1318, 1322 (Okla. 1996) ("Foreseeability as an element of duty of care creates a 'zone of risk' and is a minimum threshold legal requirement for opening the courthouse doors.").

Color Ink argues that it owed no duty to Plaintiff, emphasizing that LHC accepted Color Ink's flower racks as delivered. *See* Def.'s Mot. at 14-16. Color Ink asserts that it was "not foreseeable to Color Ink" that LHC "would place a damaged flower rack in a position for a customer to be injured" and that, due to LHC's sole control over the flower rack and the premises after delivery, "Color Ink owed . . . no duty to Plaintiff with regard to the condition or location of the flower rack at the time of his accident." *Id.* at 16.

Plaintiff contends that his injury was reasonably foreseeable to Color Ink. Plaintiff points to testimony of Color Ink's representatives reflecting that Color Ink knew the flower racks were used for display purposes. *See* Pl.'s Resp. at 10-13; Sciscoe Dep. 17:15-18:10. Plaintiff also emphasizes the testimony of Color Ink's and LHC's representatives to the effect that a cart with its tongue in the condition of the one involved in the May 2nd incident

6

should not be used for transport and that, if Color Ink had seen a cart with such a tongue, Color Ink should have replaced it or pulled it out of service. *See* Pl.'s Resp. at 11-12; Sciscoe Dep. 25:22-26:4; Van Dyke Dep. 75:5-8.

In light of the cited evidence indicating that Color Ink was aware that the Store may use one or more of Color Ink's flower racks to display flowers to customers and that a damaged flower rack tongue would be hazardous, the Court finds that a disputed question of material fact exists as to whether "an ordinary prudent person would recognize that if he or she did not act with ordinary care and skill in regard to" selecting and delivering the flower rack deployed to the Store, "he or she may cause danger of injury to" a customer of the Store. *Schubert v. Ameripride Servs., Inc.*, No. CIV-12-639-D, 2013 WL 4451268, at *3 (W.D. Okla. Aug. 14, 2013) (internal quotation marks omitted); *see Weldon v. Dunn*, 962 P.2d 1273, 1276 (Okla. 1998). "In such cases, the duty at once arises to exercise care commensurate with the situation in order to avoid such injury." *Schubert*, 2013 WL 4451268, at *3 (internal quotation marks omitted) (noting, in negligence case brought by business employee, the cleaning company's concession that its employee had a duty to clean the business premises with due care); *see also Iglehart v. Bd. of Cnty. Comm'rs of Rogers Cnty.*, 60 P.3d 497, 502 (Okla. 2002) ("Generally a defendant owes a duty of care to all persons who are foreseeably endangered by his conduct with respect to all risks which make the conduct unreasonably dangerous." (internal quotation marks omitted)). On the current record, Color Ink has not shown it is entitled to judgment as a matter of law based upon a lack of duty of care owed to Plaintiff.

*2. Causation*

Color Ink additionally argues that Plaintiff cannot prove that Color Ink's breach of its duty of care "proximately caused" Plaintiff's injury. *Lockhart v. Loosen*, 943 P.2d 1074, 1079 (Okla. 1997). Color Ink first points to Plaintiff's lack of proof that the relevant rack was one of Color Ink's or that the rack was damaged prior to or during its delivery to the Store.

This Court has summarized Oklahoma law defining the requirements for proximate cause as follows:

> An event's proximate cause is that "which in a natural and continuous sequence, unbroken by an independent cause, produces the event and without which the event would not have occurred." *Johnson v. Mid-South Sports, Inc.*, 806 P.2d 1107, 1109 (Okla. 1991) (citation omitted). Although causation is generally a question of fact, the question becomes an issue of law when there is no evidence from which a jury could reasonably find the required proximate, causal nexus between the careless act and the resulting injuries. Where the evidence together with all the inferences which may be properly deduced therefrom is insufficient to show a causal connection between the alleged wrong and the injury, the issue of proximate cause becomes a question of law. . . . .
>
> Under Oklahoma law, proximate cause consists of two elements: cause in fact and legal causation. Cause in fact deals with the "but for" consequences of an act; the defendant's conduct is a cause of the event if the event would not have occurred but for that conduct. Legal causation, on the other hand, concerns a determination whether legal liability should be imposed as a matter of law where cause in fact is established and depends upon considerations of common sense and policy. A finding of proximate cause must be based on something more substantial than mere speculation and conjecture.

*Hartman v. United States*, 923 F. Supp. 2d 1287, 1290 (W.D. Okla. 2013) (citations and internal quotation marks omitted).

8

Here, the summary-judgment record establishes that Color Ink was responsible for the repair and maintenance of its flower racks and that Color Ink determined whether a flower rack was fit to use for delivering flowers. Sciscoe Dep. 11:8-18, 15:10-23, 25:22-26:4; Van Dyke Dep. 75:5-8. The record further shows that Color Ink supplies the Store's plants and that multiple flower racks of the kind that injured Plaintiff were shipped to the Store by Color Ink in the two weeks preceding the May 2nd incident. *See* Bills of Lading at 1-5. The current record does not establish with certainty whether the tongue on the rack involved in the incident was damaged prior to leaving the Color Ink facility, during delivery to the Store, or after delivery when control over the rack transferred to LHC. Although Color Ink representatives have stated their belief that Color Ink would not allow a rack with a similarly damaged tongue to be used to transport flowers, neither that evidence nor the other materials cited by Color Ink preclude a finding that the particular rack involved in the incident was damaged while in Color Ink's control. Construed in Plaintiff's favor, there are genuine disputes as to whether Color Ink supplied a damaged rack to the Store and whether such a damaged rack produced Plaintiff's injury.

Color Ink additionally asserts that a jury could not reasonably find the required causal nexus because any negligence of Color Ink was at most a "mere condition" and LHC's negligence was a "supervening cause" of Plaintiff's injury. *See* Def.'s Mot. at 16-21; Def.'s Reply at 4-9. Color Ink contends that, even assuming the rack was damaged when delivered to the Store, LHC severed the chain of causation because LHC employees would have been the ones to place the damaged rack in the sales area and to create the dangerous condition on May 2, 2021.

A new act "insulate[s] the original actor from liability" as a "supervening cause" when it is "(1) independent of the original act, (2) adequate of itself to bring about the result," and "(3) one whose occurrence was not reasonably foreseeable to the original actor." *Graham v. Keuchel*, 847 P.2d 342, 348 (Okla. 1993) (emphasis omitted). "When such an act qualifies as a cause, the original negligence mutates into a mere condition and as a matter of law is no longer actionable." *Lockhart*, 943 P.2d at 1079 (emphasis omitted). Here, again, the summary-judgment record does not clearly establish whether the tongue on the flower rack involved in the May 2nd incident was damaged prior to leaving the Color Ink facility, during delivery to the Store, or after delivery when control over the rack transferred to LHC. LHC has stated that it believes a Color Ink-retained truck driver "last handled the metal tongue" prior to the incident. LHC Disc. Resp. (Doc. No. 58-3) at 2. Store employees, however, offered varying responses as to the typical procedure employed at that time for unloading, placing, and moving Color Ink's flower racks. *See* Van Dyke Dep. 32:5-33:24, 57:13-58:4 (Doc. No. 60-1) (testifying that Store employees direct the truck drivers on where to unload racks outside the building but that employees then bring racks to the garden center and also sometimes bring them inside at night); Asebez Dep. 74:4-76:12 (Doc. No. 60-2) (testifying that after racks are left outside the garden center some new flowers are watered immediately but others are moved inside); Hoehner Dep. 13:1-20 (Doc. No. 60-3) (testifying he was not sure if the drivers or LHC employees unloaded the racks). Under the record presented, there remain questions of fact as to whether an unforeseeable act or omission of LHC occurred and "was adequate of itself" to

10

injure Plaintiff and insulate Color Ink from liability. *Graham*, 847 P.2d at 348 (emphasis omitted).

In sum, upon viewing the summary judgment record in the light most favorable to Plaintiff, the Court is unable to say that there is "no evidence" from which a jury could reasonably find the requisite nexus between Color Ink's alleged transport and delivery of the rack and Plaintiff's resulting injury. *Hartman*, 923 F. Supp. 2d at 1290 (internal quotation marks omitted). Accordingly, "whether or not the actions of [Color Ink] were the proximate cause of the injury to [Plaintiff], or merely established a condition," "is a fact question, and therefore one for the jury to decide." *Delbrel*, 913 P.2d at 1322.

### B. Punitive Damages

Finally, Color Ink seeks summary judgment on Plaintiff's request for punitive damages, arguing that the record does not support a finding that Color Ink showed "reckless disregard for the rights of others," as required for such an award to be made under Oklahoma law. Okla. Stat. tit. 23, § 9.1; *see* Def.'s Mot. at 21-23 (citing *Cardenas v. Schneider*, No. CIV-14-386-R, 2020 WL 5947588, at *2-3 (W.D. Okla. Oct. 7, 2020)).

Plaintiff offers no response to this argument and thereby concedes the propriety of entering judgment in Color Ink's favor on the request. *Cf.* LCvR 7.1(g). In addition, the Court has undertaken its own review of the materials presented and concludes that, even when the evidence and the inferences drawn from the record are construed in the light most favorable to Plaintiff, no reasonable jury could find by the required standard of clear and convincing evidence that Color Ink acted with reckless disregard. Accordingly, Color Ink

is entitled to judgment in this respect. *See Cardenas*, 2020 WL 5947588, at *3; Fed. R. Civ. P. 56(a).

## CONCLUSION

For the reasons outlined herein, the Motion for Summary Judgment (Doc. No. 49) of Defendant Color Ink Corporation, d/b/a Dallas Johnson Greenhouse is DENIED IN PART and GRANTED IN PART. Summary judgment is denied as to Plaintiff's negligence claim. Summary judgment is granted as to Plaintiff's request for punitive damages.

IT IS SO ORDERED this 29th day of May, 2024.

*/s/ Charles B. Goodwin*
CHARLES B. GOODWIN
United States District Judge